### No. 91.—LEWIS THOMPSON v. LIZZIE SIMMONS, Administratrix.

An obligation or bond, acknowledging an indebtedness, and agreeing to pay the interest annually, on a day fixed, together with so much of the principal debt as will make up a fixed amount, which payments are to be made each succeeding year, except in case of failure to make crops of cotton, when the interest only is to be paid, does not fall under the denomination of promissory notes, and is not, therefore, prescribed in five years.

The reinscribing a mortgage from the registry book, within ten years, is sufficient to give notice. The fact that it is a copy of a copy does not invalidate the registry.

The doctrine announced in the case of Sanderson v. Sandige, 21 An., page 757, is reaffirmed and followed in this case, fixing the amount due on an obligation for the purchase of land and slaves, where payments had been made and credits given before emancipation of the slaves. The rule adopted by the court in that case was, that the amount of the payments made were to be deducted from the whole debt, and the balance due to be divided ratably, and that which was for slaves to be deducted and judgment given for the balance, with a recognition of mortgage on the lands.

APPEAL from the Fourteenth Judicial District, parish of Ouachita. W. J. Q. Baker (attorney at law), Special Judge, vice Ray, J., recused. John Ray, for plaintiff and appellee. Garrett & Garrett, and Richardson & McEnery, for defendant and appellant.

TALIAFERRO, J. The plaintiff brings this action against the administratrix of the estate of John T. Simmons, deceased, to enforce a claim of one hundred and eleven thousand six hundred and thirty-four dollars and ninety-three cents, with eight per cent. per annum interest thereon from the first day of March, 1861. This indebtedness, it appears, arose from the purchase, in the year 1857, by E. P. Tatum and the decedent, John T. Simmons, from Willam Ballard, of a tract of land lying on the Ouachita river, in the parish of Caldwell, containing three thousand three hundred and twenty-two acres, embracing a large cotton plantation, with the buildings and improvements thereon, together with the work animals, cattle, hogs, sheep, farming utensils, etc., belonging to the plantation and thereto attached. A large number of slaves were included in this purchase, and formed a very large

Thompson v. Lizzie Simmons, Administratrix.

component part of the consideration or price stipulated to be paid for the whole. The written obligation entered into by Tatum and Simmons to pay the price agreed upon, or rather the remainder of the price after deducting a cash payment of $50,000, and which was $132,000, is thus written:

"$132,000. New Orleans, February 11, 1857.

"We, the undersigned, acknowledge ourselves to be indebted jointly and *in solido*, to Dr. Benjamin Ballard in the full sum of one hundred and thirty-two thousand dollars for value received; one hundred and six thousand dollars of which is to bear interest at the rate of eight per cent. per annum from this date until final payment, and the remaining twenty-six thousand dollars is to bear the same rate of interest from and after the first day of March, eighteen hundred and sixty-one, until final payment; which said capital sum and interest we bind ourselves, jointly and *in solido*, to pay to the said Benjamin Ballard, his heirs or assigns, at the office of Messrs. Bogart, Foley & Avery, in this city, in the manner following, to wit: The interest to be paid annually on the first day of March, 1858, and on the same day in each succeeding year, together with so much of the capital as will make up the sum of fifteen thousand dollars, except in case of our failure to make crops of cotton, when the interest only is to be paid; and we moreover bind ourselves to pay more than the said sum of fifteen thousand dollars at the time of such annual payments, if we are able to do so, in conformity with the terms of an act passed before Theodore Guyol, a notary public in New Orleans, of even date herewith.

"E. P. Tatum,
"J. T. Simmons."

The payment of this obligation was secured by mortgage upon the property sold, bearing the same date. In a suit in the District Court of the United States, a judgment was obtained by Lewis Thompson against William Ballard for a large sum, and under execution issuing upon it this obligation was seized and sold, and Thompson became the purchaser of it for $71,134. Thompson having died since the inception of this suit, his executors filed their appearance and became plaintiffs. They seek to enforce the mortgage upon the land to obtain payment of the amount claimed.

The defense is: The prescription of five years in bar of the obligation sued on. The prescription of ten years against plaintiff's claim for mortgage and privilege, arising from failure to reinscribe the mortgage within ten years. The failure of consideration, to the extent of the estimated value of the slaves, $116,000. That the payment of $50,000 made at the time of the transfer, and the payments subsequently made and entered on the back of the obligation, should be imputed to the payment of the estimated value of the lands and personal property.

Judgment was rendered in the court below for $27,176 68 on the bond sued on, as the balance due on the estimated value of the land and personal property, with eight per cent. interest thereon from the first of March, 1861, with recognition of mortgage and vendor's privilege upon the land, and the rendition of an order that it be seized and sold to pay the amount of the judgment; and that so much of the amount of the bond as is recognized as due and owing, be paid out of the proceeds of the land mortgaged, as having precedence over other claims; and that so much as may not be paid out of such proceeds be paid, in due course of administration, out of proceeds of other effects of the estate of Simmons.

From this judgment the defendant has appealed.

The first point made in the defense is, that the obligation upon which this action is founded is a promissory note, and subject to the prescription of five years.

One of the marked characteristics of a promissory note is, that payment of a determinate sum of money is promised to be made at a time definite and fixed. The instrument sued on in this case, taken alone, seems devoid of this feature, indispensable in a promissory note. The obligation is contracted on both the potestative and the casual condition. The obligors are to pay $15,000, part interest and part capital, on the first of March, of every year in which they may be able to make crops. Then the periods at which the $15,000 payments are to be made are clearly not absolutely known. They are as uncertain as the crops from which they are to be made. The obligation, construed in connection with an instrument specially referred to in the obligation. itself, seems to render the terms at which payments are to be made still more indefinite and contingent. We can only consider the instrument sued on as evidencing a contract giving rise to a personal action within the contemplation of article 3508, of the Civil Code, and subject to the prescription of ten years. This view of the character of the instrument disposes of the question of prescription. It is shown by the letter of Simmons to Lewis Thompson, under date of twentieth November, 1866, that he acknowledged his indebtedness on what he calls "the bond which Dr. Ballard held against him." This interrupted prescription which had not then accrued.

The extinction of the mortgage, through failure to reinscribe within ten years, is contended for on the ground that no legal reinscription was made within the period required. It seems the reinscription was made, from the inscription of the act as it stood on the book of mortgages. This, defendant holds, is not a fulfillment of the law which requires that the inscription shall be made by recording a duly certified copy of the original, C. C. 3330; and that the reinscription must be made in the same manner that the inscription or first recording was

Thompson v. Lizzie Simmons, Administratrix.

made, C. C. 3333. The act reinscribed, it is held, is the copy of a copy of a copy; that it was not reinscribed from an "authentic copy of the act," and that these requirements of the Code are *stricti juris* and imperative.

If the rigid adherence to the letter of the law insisted upon were to govern, the inscription or reinscription of a mortgage from the original act itself, would be null and void, because article 3333 directs that the inscription shall be made from an authentic copy. The law makes the copy of a copy suffice for notice to the world, the only object aimed at in recording mortgages. If the copy of a copy, or the act in its third phase, is sufficient for notice, why may it not be equally so in its quartern or fourth phase? But things which are equal to the same are equal to one another. When, therefore, the act, as reinscribed from the book, is a perfect reproduction of the inscription as made from the authentic copy, it has the same effect that the inscription has, because it is equally identical with the authentic copy. It is shown in this case that the reinscribed act is an exact reproduction of the first inscription. This, we think, sufficient.

The next ground of defense, the failure of consideration to the extent of the estimated value of the slaves, is well taken, and a reduction of the debt has been made accordingly. Our attention has been called by the plaintiff's counsel, to an error of calculation in the making up of the judgment in the court below, and asks that the correction be made. Taking the evidence introduced, showing the relative value of the land, slaves and personal property embraced in the sale from Ballard to Tatum and Simmons, together with the data furnished in the record, we arrive at the conclusion that the sum of $71,427 is the deduction to be made as the part of the $111,634, representing the remaining balance of the price stipulated for the slave property. This deduction being made, there remains $40,207 due on the first of March, A. D. 1861, for the land and personal property. For this sum and interest, as stipulated, the plaintiff is entitled to judgment.

It is, therefore, ordered, adjudged and decreed that the judgment of the district court be amended so as to award judgment, which is hereby decreed in favor of the plaintiff for the sum of forty thousand two hundred and seven dollars, with interest thereon at the rate of eight per cent. per annum, from the first day of March, A. D. 1861, until paid. And it is further ordered, that in all other respects the judgment of the lower court be affirmed with costs.

Chief Justice Ludeling recused.

Rehearing refused.